# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### Greenbelt Division

| | | |
|---|---|---|
| In re: | * | |
| SDI PROPERTIES, LLC, | * | Bankruptcy Case No.: 20-20650-LSS |
| Debtor. | * | (Chapter 7) |
| * * * * * * | * | |
| PATRICIA B. JEFFERSON, | * | |
| Chapter 7 Trustee | | |
| Miles & Stockbridge, P.C. | * | |
| 100 Light Street, 10th Floor | | |
| Baltimore, Maryland 21202, | * | |
| Plaintiff, | * | |
| v. | * | ADV. PROC. NO.: 22-00193 |
| JENNIFER ALTER, et al. | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * * * | | |

## MARYLAND INSURANCE ADMINISTRATION'S OPPOSITION TO EAGLE PREMIER TITLE GROUP, LLC'S AND JENNIFER ALTER'S "MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER FROM SUBPOENA ISSUED TO TRUSTEE BY MARYLAND INSURANCE ADMINISTRATION"

The Maryland Insurance Administration ("Administration"), through its attorneys, hereby files this opposition to Defendants Eagle Premier Title Group, LLC's ("Eagle") and Jennifer Alter's ("Ms. Alter") (collectively "Defendants") "Motion to Quash and Motion for Protective Order From Subpoena Issued to Trustee by Maryland Insurance Administration" (ECF # 97) ("Motion"), and states:

1.      The Motion filed by Defendants relates to an administrative subpoena served not on Defendants but instead on the Trustee, pursuant to § 2-203 of the Insurance Article, Annotated Code of Maryland,[1] in connection with an administrative investigation under the Insurance Article.   The crux of the dispute that Defendants seek to have this Court decide pertains to an investigative subpoena that was served by the Administration on the Trustee, a subpoena that the Trustee did not objection to, and, as detailed below, is lawful and in furtherance of the Administration's statutory mandate to investigate licensees such as Defendants.[2]

2.      It is not proper for this Court to decide the validity of the Administration's investigative subpoena in the context of this bankruptcy case because the subpoena was not served in this bankruptcy case, which was dismissed on March 29, 2024, *see* Docket Report, attached hereto as MIA Ex. 1.   This Court lacks subject matter jurisdiction over the Administration's efforts to obtain records from Defendants, its licensees.

3.      The business of insurance, including the issuance of licenses to individuals to act as insurance producers, is subject to extensive regulation in Maryland.   Insurance is sold by "insurance producers," who are required to obtain a license from the Administration in order to sell, solicit, or negotiate insurance products in Maryland.   Md. Code, Ann., Ins. Art §§ 1-101 and 10-103(c)(1).   In exchange for the privilege of selling insurance products to consumers and businesses in this State, insurance producers must abide by the provisions of the Insurance Article, which are enforced by the Commissioner.  *See* § 2-103(b)(2).  *See also* § 2-108.

---

[1] Unless otherwise noted, further statutory references shall be to Md. Code, Ann., Ins. Art.
[2] The Motion to Quash was never served on the Administration but was provided to the Administration by the Trustee.

4.    The licensing provisions of the Insurance Article exist for the protection of the public and insurers. *Insurance Comm'r. v. Nuger*, 238 Md. 55, 69 (1965). That is because insurance producers hold positions of public trust and owe fiduciary duties to their individual clients, as well as to insurance companies that they represent. *See Schinnerer v. Md. Ins. Admin*., 147 Md. App. 474, 486 (2002), *writ of cert. denied*, *Schinnerer v. Md. Ins*., 373 Md. 408 (2003). Insurance producers must demonstrate competency in the field of insurance by meeting the initial and continuing educational requirements and by passing examinations administered by the Commissioner. *See* §§ 10-104(f); 10-105(e). Subject matter competency is not, however, sufficient to permit an individual to obtain or retain a license to act as a producer in this State. Rather, an applicant also must be and remain "of good character and trustworthy based on the standards of § 10-126" of the Insurance Article. §§ 10-104(c); 10-115. In all transactions, the ability to provide accurate information to clients and insurers is essential.

5.    The standards of § 10-126 set forth certain specific acts and omissions that warrant regulatory sanction against a licensed producer. Specifically, subsection (a)(6) vests in the Commissioner the broad authority to revoke the license of a licensee who "has committed fraudulent or dishonest practices in the insurance business," and subsection (a)(13) authorizes the Commissioner to revoke the license of a licensee who "has otherwise shown a lack of trustworthiness or competence to act as an insurance producer." § 10-126(a)(6) and (13). *See Culver v. Insurance Comm'r*, 175 Md. App. 645 (2007) (affirming the Commissioner's Final Order revoking the license of a producer who had been found, *inter alia*, to lack trustworthiness or competence). In other words, trustworthiness and competence, or the lack thereof, are factors set forth in § 10-126(a)(13) and therefore appropriate for the Commissioner to consider in deciding whether a licensee has engaged in misconduct and whether to take a disciplinary action.

6.    In order to uncover misconduct, the Commissioner is empowered to and bound to, *inter alia*, "examine the accounts, records, documents, and transactions that relate to the insurance affairs or proposed insurance affairs of: (1) an insurance producer…." § 2-206(1).

7.    One of the investigatory tools that the Maryland Legislature has granted the Commissioner is the power to issue subpoenas. *See* § 2-203(a)(3). Moreover, the willful failure of a person to "produce evidence requested by the Commissioner" is "a misdemeanor and on conviction [the person who violates § 2-203(f)(1)] is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both." § 2-203(f)(1) and (2). In short, the Administration can investigate a producer for any alleged violations of the Insurance Article and is authorized to subpoena records from any source. The Administration views Defendants' Motion as frivolous, sanctionable under the rules of this Court, and a possible violation of § 10-126(a)(1) and (14).

8.    Defendants contend that the Trustee is not obligated to comply with the Administration's subpoena because the adversary proceeding was dismissed with prejudice on March 29, 2024. *See* Mot. at 3. Defendants fail to grasp that the subpoena was not issued in the adversary proceeding. Rather, it was issued pursuant to statutory authority and in furtherance of its legitimate investigation.

9.    Defendants contend that the Administration "lacks standing in the instant matter" and "has no ability to compel the Trustee to produce the requested documents …." Mot. at 3. Again, the subpoena was not issued in this dismissed adversary proceeding. Rather, it was issued as part of an independent *state* agency's investigation into allegations of serious misconduct set forth in the Trustee's complaint. *Defendants* are the ones who lack standing. They lack standing to make arguments on behalf of the Trustee, arguments the Trustee has yet to

adopt or make for herself. *Defendants* lack authority to file a motion, without bothering to serve the Administration, in a matter that was dismissed with prejudice. Defendants' reluctance to have the records turned over by the Trustee begs the question—what are they trying to hide? It is the Administration's job to find out.

10.     Defendants also contend that the Administration "has no ability to compel the Trustee to produce the requested documents in a matter that has been dismissed." Mot. at 3. This contention is wrong for several reasons. First, the subpoenas was not issued as part of this dismissed adversary proceeding. Rather, it was issued as part of an active investigation into allegations of serious professional misconduct by Defendants.[3] Second, the willful failure of a person to "produce evidence requested by the Commissioner" is "a misdemeanor and on conviction [the person who violates § 2-203(f)(1)] is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both." § 2-203(f)(1) and (2). It appears that Defendants' position is that the Trustee can and should ignore the Administration's subpoena unless and until the Administration obtains an order compelling compliance with the subpoena. *See* Mot. at 4. This suggestion, which could subject the Trustee to a misdemeanor conviction if followed, should be rejected. The notion that subpoenas issued by independent state agencies should be ignored unless the state agency obtains an order from a state court is ludicrous, prejudicial to the administration of justice, and contrary to the "Settlement and Release Agreement."

---

[3] The Trustee alleged that:

> The settlement statements produced by Eagle Premier and Jennifer Alter did not accurately disclose the source of the cash or that the Alters and Kaiman were being repaid with loan proceeds and were receiving an additional fee on top of the amount they wired to Eagle Premier.

ECF # 1 (Complaint) at 4.

11.     Defendants contend that the confidentiality provisions of a "Settlement and Release Agreement" ("S.A.") reached in the adversary proceeding can shield them from the Administration's lawful investigation into allegations of their misconduct and from obtaining records for all source.  *See* Mot. at 4-5.  Defendants are mistaken for several reasons.  First, the S.A. upon which they rely specifically contemplates disclosures "as required by law."  S.A. at 6, ¶ 15(a).  Insurance Article § 2-203 is a "law" and it requires disclosure.  Moreover, the S.A. specifically *exempts* subpoenas from its purview.  *See* S.A. at 7, ¶ 15(c)(2) and (3) ("Trustee .. may not make any … statement … *except pursuant to* … (2) Court order, *in response to a subpoena or as otherwise required by law*, accounting or regulatory authorities, or (3) …*other parties with a legitimate need to know*.") (emphasis added).  The subpoena is valid and the Trustee's response *is* required by law.  Moreover, the Commissioner has "a legitimate need to know" whether the licensees engaged in the fraudulent conduct described in the Complaint in this matter.  Clearly, the S.A. contemplates disclosure to governmental agencies which are acting pursuant to their police powers, as is the case with respect to the Administration's administrative subpoena.

12.     Defendants make a number of additional scattershot arguments, none of which are meritorious.  For example, Defendants contend, without citation to *any* authority, that the Administration must establish "a substantial need for the records it is seeking from the Trustees."  Mot. at 6.  Defendants are not correct.  The subpoena is valid because it is authorized by law, relevant to the Administration's valid inquiry into, *inter alia*, the trustworthiness and competence of its licensees, and not too indefinite or overbroad.  *See Washington Home Remodelers, Inc. v. State, Off. of Att'y Gen., Consumer Prot. Div.*, 426 Md. 613, 623 (2012).  Defendants also

mistakenly believe that the scope of any investigation by the Administration is limited to allegations of insurance fraud. *See* Mot. at 6. The adversary proceeding complaint alleges:

> Jennifer Alter and Eagle Premier aided and abetted the scheme and issued false settlement statement to further the flipping scheme, for which Jennifer Alter, her family and Eagle Premier were handsomely paid.

ECF # 1 at 3.

The Administration has the duty to investigate (and if warranted, take disciplinary action against) insurance producers who are alleged to have violated § 10-126, which does not limit itself to "insurance fraud." This holds true whether or not "Eagle Premier is … aware of any complaint …." Mot. at 7.

13.    Defendants contend that the Administration "is already in possession of the records it is seeking from the Trustee" and, consequently, "there is no legal or legitimate bases [sic] for the Subpoena to be complied with." Mot. at 3. The subpoena issued to the Trustee is valid whether or not the Administration received records from another source. The contention that Defendants have already produced the same records is beside the point. Additionally, Defendants lack standing to make this argument. As licensees of the Administration, Defendants are required to support the Administration's efforts to investigate misconduct, not thwart those efforts. Moreover, the allegations in the Complaint in this matter are so serious, and the misconduct alleged so egregious, that it is not unwarranted for the Commissioner to want to investigate whether certain documents were altered.

WHEREFORE, for these reasons, this Court should deny Defendants' Motion.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Ioannis Laskaris

IOANNIS LASKARIS
Attorney No.:  27120
Assistant Attorney General
Maryland Insurance Administration
200 Saint Paul Place, Suite 2700
Baltimore, Maryland 21202
ioannis.laskaris@maryland.gov
(410) 468-2033
(410) 468-2086 (Facsimile)

April 17, 2024

Attorneys for the Maryland Insurance
Administration

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>17th</u> day of April, 2024, the foregoing was filed electronically

and served electronically by the CM/ECF system on all persons entitled to service:

Emily Devan
Miles & Stockbridge P.C.
100 Light Street 10th Floor
Baltimore, MD 21202
Counsel to the Chapter 7 Trustee
Office of the U.S. Trustee
6305 Ivy Lane,
Greenbelt, MD, 20770

Kaiman Property Management, LLC
c/o Gregory Todd Alter, Jr.
730 Shireoaks Dr.
Martinsburg, WV 25403

Susan Alter
909 John St.
Martinsburg, WV 25401

Maurice VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Attorney for WCP Fund I, LLC

Gregory Alter, Jr.
730 Shireoaks Dr.
Martinsburg, WV 25403

Gregory Alter, Sr.
909 John St.
Martinsburg, WV 25401

/s/ Ioannis Laskaris

IOANNIS LASKARIS